ROGERS (FRENCH v.). See Case No. 5,103.

ROGERS, The HARRIET. See Case No. 6,-103.

ROGERS (HEARD v.). See Case No. 6,298.

ROGERS v. HURNEY. See Case No. 2,159.

---

## Case No. 12,012.

### ROGERS v. JEWETT et al.

[Brunner, Col. Cas. 683; [1] 22 Law Rep. 339.]

Circuit Court, D. Massachusetts. Oct. Term, 1858.

COPYRIGHT—INFRINGEMENT—STATUTORY PENALTY.

Under the act of congress of 1831 [4 Stat. 436], the statutory penalty for violation of a copyright is not incurred unless the defendant reprint a transcript of the entire work; it is not enough that it amounts to an infringement of plaintiff's copyright.

At law.

C. M. Ellis, for plaintiff.

Mr. Sewall, contra.

CURTIS, Circuit Justice. This is an action of debt for penalties founded on the sixth section of the copyright act of February 3, 1831. The declaration, which is demurred to, alleges in substance that the plaintiff having an exclusive right to print and publish a certain book, the defendants have printed and published a book "whereof a large part is copied from said book of the plaintiff, and is an infringement of the copyright thereof." The question raised by the demurrer is whether the statute penalty is incurred by printing so much of a book as to amount to an infringement of its copyright. The sixth section of the act is as follows: "That if any person or persons from and after the recording the title of any book or books according to this act shall, within the term or terms herein limited, print, publish, or import, or cause to be printed, published, or imported, any copy of such book or books without the consent of the person legally entitled to the copyright thereof, first had and obtained in writing, signed in presence of two or more credible witnesses; or shall, knowing the same to be so printed or imported, publish, sell, or expose to sale; or cause to be published, sold, or exposed to sale, any copy of such book without such consent in writing; then such offender shall forfeit every copy of such book to the person legally, at the time, entitled to the copyright thereof; and shall also forfeit and pay fifty cents for every such sheet which may be found in his possession, either printed or printing, published, imported, or exposed to sale contrary to the intent of this act, the one moiety thereof to such legal owner of the copyright as aforesaid, and the other to the use of the United States, to be recovered by action of debt in any court having competent jurisdiction thereof." The question depends on the meaning of the words "shall print," etc., "any copy of such book or books." What Lord Mansfield said in Millan v. Taylor, 4 Burrows, 2311, was the technical meaning of the word "copy," viz., the incorporeal right to the sole printing and publishing, cannot have been the sense in which that word "copy" is here used. It means transcript; and the only doubt is whether the thing complained of must be a transcript of the entire book, or whether the penalty is incurred by printing so much of it as amounts to an infringement of its copyright. The words, "a copy of a book," naturally import a transcript or copy of the entire book. By the fourth section of this act, the applicant for a copyright of a book must deliver to the clerk of the district court "a copy of the same." No one would suppose this condition complied

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

with by a delivery of a copy of less than the entire book; and it would hardly consist with that principle which requires penal laws to be construed strictly, if I were to hold that the words "a copy of a book" meant only a copy of the entire book in the fourth section, which confers a privilege, and meant not only this, but also a copy of any such part of a book as would infringe its copyright, in the sixth section which inflicts a penalty. To construe the act, as the plaintiff claims it should be construed, would be, in effect, to insert in it, after the words "copy of a book." the very important addition "or any substantial and material part thereof sufficient to infringe its copyright." This enlargement of a highly penal law so as to extend it to a large class of cases not described in it, is inconsistent with the soundest principles of interpretation.

I am not only unable to say that congress did intend to inflict these penalties on the unlawful publication of parts of a copyrighted book, because they have failed to say so, but I think it clearly appears from a comparison of the act of May 31, 1790 [1 Stat. 124], with the provisions of this act, by which it has been revised and repealed, that congress did not intend to inflict these penalties upon the unlawful printing or publication of less than an entire book. The second section of the act of 1790 provided for penalties for the printing, etc., of any copy or copies of any map, chart, book or books, without the consent of the proprietor. Maps, charts, and books are here all included in the same section, and subject to the same provisions. When this act was revised and repealed by the act of 1831, the provisions of its second section are divided and changed. The unlawful printing of books is prohibited under penalties by this sixth section now under examination. The unlawful making of maps, charts, engravings, prints, and musical compositions is prohibited under other penalties by the seventh section. The sixth section in describing the offense, uses the language of the act of 1790, "print," etc., "any copy of such book or books"; the seventh section materially changes this; its language is "engrave, etch, or work," etc., "either on the whole, or by varying, adding to, or diminishing the main design with intent to evade the law; or shall print," etc., "any such map," etc., "or any parts thereof." This makes it plain that in enacting this law congress did intend to inflict penalties on any such piracy of the copyright of a map, chart, or engraving as would amount to an infringement of the copyright; and, so intending, that the appropriate language was used to express the intent. In the preceding section, touching books, all such language being omitted, the inference is obvious and strong that it was not intended to include cases of copying parts of a book, but only the republication of the whole. It is urged that this construction would render the law of little utili-

ty, because it would be easy to omit some unimportant parts, and thus escape. Whether such omisssion would evade this law, I am not called on to decide. If it did, literary property would be better protected than the rights of inventors; for they can only have their private remedies at law and in equity, if their inventions are substantially copied, and authors have not only these private remedies, but they, who attempt to offer to the public reprints of their works, are subjected to severe penalties. Whether these penalties should be imposed on those who offer some parts of their books to the public, is for the legislature to determine. As to maps, charts, engravings, prints, and musical compositions, the legislature has thought proper to have the penalties applied to any unlawful copy of such work made with design to evade the law. But no such intention is manifested in regard to unlawful copies of parts of books.

So far as I know, the question arising in this case has not been authoritatively decided. It was raised in the circuit court in the case of Backus v. Gould, 7 How. [48 U. S.] 798, and was ruled pro forma by the circuit court of New York. But the supreme court did not have occasion to pass upon it, that case having been decided on another ground.